LEAHY *v.* RICHARDSON.

Opinion delivered February 27, 1922.

1. EVIDENCE—WRITTEN INSTRUMENT—PAROL TESTIMONY.—Where a written instrument is not sufficiently definite to be interpreted from a study of its provisions, parol testimony may be admitted to show what the contract was.

2. FRAUDS, STATUTE OF—MEMORANDUM OF LEASE.—An oil and gas lease was not within the statute of frauds where cash for the rental was deposited in escrow together with the lease and an abstract of the title, though the lease alone was too indefinite to set out the terms of the lease.

3. SPECIFIC PERFORMANCE—RIGHT TO ENFORCE LEASE.—Where a contract for a lease obligated the lessor only to convey such title as the lessor had, and he tendered a lease accordingly, the lessee, upon rejecting the lease for a defect in the lessor's title, was not entitled to compel specific performance.

Appeal from Union Chancery Court; *J. Y. Stevens,* Chancellor; reversed.

*Marsh & Marlin,* for appellants.

The written agreement of sale was so indefinite and uncertain as to require parol evidence to explain it. To

entitle one to specific performance, the contract must be complete and free from ambiguity.    25 R. C. L., p. 218, sec. 17; 160 S. W. 854.

Appellee did not pay or offer to pay the consideration for the lease and was not entitled to maintain suit for specific performance.    184 Pac. 1010; 181 Pac. 964.

There was no mutuality of obligation, and appellee was not entitled to specific performance.    25 R. C. L., pp. 232, 233, par. 33    Equity will not decree specific performance where performance by one party is entirely optional.    170 Pac. 691; 121 Fed. 674; 57 C. C. A. 428; 25 Okla. 809; 38 Ark. 31; 23 N. J. 336; 4 Ark. 252; 19 Ark. 23; 27 Ark. 704.    Nor where it would be inequitable under all the circumstances, resulting in wrong or injustice. 34 Ark. 663; 49 Ark. 306; 14 Ark. 482.

*Goodwin & LeCroy,* for appellee.

The agreement of sale, when read in connection with the assignment, makes the result desired by the parties plain.    See 45 Ark. 17.

Appellee was entitled to a marketable title, and that was what he was demanding.    120 Ark. 69; 63 Ark. 548; 11 Ark. 75; 85 Ark. 289; 114 Ark. 436; 211 S. W. 917; 20 Ark. 648.

SMITH, J.    This suit was brought April 29, 1921, to enforce the specific performance of a contract resting partly in writing and partly in parol.    The written portion is as follow:

"Agreement of Sale.

"This agreement, made and entered into this 19th day of March, 1921, by and between J. F. Robinson, agent, and T. J. Leahy, trustee.

"Witnesseth: That the said T. J. Leahy has this day executed an oil and gas assignment covering the following described lands in Union County, Arkansas, to-wit: Northwest quarter of the northwest quarter, section 21, township 18 south, range 15 west, consisting of forty acres, to Bank of Commerce, trustee, for the

consideration of six thousand dollars, of which the said sum of $———cash has been paid, and the said Bank of Commerce, by D. C. Richardson, for trustee, and the further sum of ——— when he shall furnish an abstract of title showing a good merchantable title to the above described lands in said Union County, said abstract of title to be furnished at the earliest possible date.

"Witness our hands this 19th day of March, 1921.

"J. F. Robinson,

"J. F. Browder, Agent."

It is apparent that this writing is not sufficiently definite to be interpreted from a study of its provisions, and it requires a consideration of the oral testimony to ascertain what the contract was. *Thompson* v. *Davenport,* 145 Ark. 276; *Izard* v. *Connecticut Fire Ins. Co.,* 128 Ark. 433. But, when read in connection with the oral testimony, it shows the following contract was made between the parties: T. J. Leahy and D. C. Richardson were each engaged in buying and selling leases in the El Dorado oil field, and in the negotiation of this contract Leahy was represented by Robinson, and Richardson was represented by Browder. The land described in the writing was owned by a Mrs. Craig, who executed an oil and gas lease thereon to Leahy, reserving to herself a royalty of one-eighth of any oil or gas produced. This lease, assigned to Richardson, was deposited in escrow with the writing set out above, together with six thousand dollars in cash, in the Bank of Commerce in El Dorado, Ark., and a few days later the abstract called for in the writing set out above was also deposited with the bank. This action met the requirements of the statute of frauds, notwithstanding the indefiniteness of the writing set out above. *Hollabaugh* v. *Taylor,* 134 Ark. 415.

The question in the case appears to be what the agreement was between these two agents with reference to this lease, and we think the testimony of those cognizant of the transaction establishes the facts set out

above and the following additional facts.    It was supposed that Leahy's title was good, and that the abstract of the title would show such to be the case.    An abstract was to be prepared at the earliest possible date and submitted to the attorney for Richardson for examination, and the Bank of Commerce in El Dorado was to hold the money and the assigned lease until the abstract had been examined; and if, after examination of the title offered, the same was approved, then the bank was to deliver the assignment to Richardson and the cash to Leahy; and, if the title was not approved, then the money should be returned to Richardson and the lease to Leahy.    Upon examination of the abstract, the attorney for Richardson found that, although the lease from Mrs. Craig to Leahy was executed on April 20, 1920, it had not been filed for record until January 18, 1921, and that in the meantime Mrs. Craig had executed to the Frederick Oil Company a lease to this land to an undivided half interest in the oil and gas rights, and that the lease to the Frederick Oil Company had been filed for record before Leahy had filed his lease for record.

The husband of Mrs. Craig testified that the Frederick Oil Company was a corporation, of which Mrs. Hancock was the president and general manager, and that Mrs. Hancock knew of the prior lease to Leahy, and that the lease to the Frederick Oil Company was intended to convey an undivided half interest in the royalty of one-eighth reserved by Mrs. Craig in her lease to Leahy; but it appears that this lease to the Frederick Oil Company was not thus limited; and that the court was warranted in the finding made that this lease to the Frederick Oil Company constituted a cloud on the title.

Upon discovering this cloud, the parties negotiated without result in an attempt to adjust their differences. In the meantime a well known as the Mack Ward well was being drilled near the land in controversy, and Leahy insisted that Richardson was trying to "ride" this well in, meaning thereby that Richardson was trying to postpone the consummation of the contract until it was known

whether the Ward well would prove to be a producer. The testimony clearly shows that the value of the lease in question largely depended on the outcome of the Ward well. Leahy called on Richardson to accept the lease or to turn it down; but Richardson insisted that Leahy acquire the Frederick Oil Company lease or execute an in demnifying bond against the assertion of any rights under that lease. Leahy did not comply with either of these requests, whereupon Richardson brought this suit to enforce specific performance, and prayed that Leahy be required to acquire the interest of the Frederick Oil Company or that, if this could not be done, that Leahy be compelled to convey such interest as he was adjudged to own, and that the consideration be abated proportionately.

Immediately after this suit was filed an assignment of the lease was again tendered to Richardson and a demand made that he pay the six thousand dollars or dismiss the suit, and notice was given that the proposition would not be held open. Richardson refused to pay or to dismiss the suit, whereupon Leahy assigned the lease to C. S. McDonald for the sum of $10,000.

Before making this sale to McDonald, Leahy drew on Richardson through the bank at El Dorado. This draft was forwarded on May 3rd by the bank at El Dorado to a bank at Shreveport, where Richardson resided, for collection. On May 5th the bank at El Dorado was advised by wire from the bank at Shreveport that the draft was not paid, and that Richardson refused to pay until the required papers were attached. On May 6th the bank at Shreveport wired the El Dorado bank that the draft had been paid, although no papers had been sent as called for in the telegram of the 5th, nor had any message regarding the draft been sent by the El Dorado bank. Between the dates of these two telegrams McDonald bought the lease. The testimony shows that the Mack Ward well came in as a producing well late on the night of May 4th, and the immediate effect thereof was to greatly enhance the value of the lease in question.

The court found that, because of the lease to the Frederick Oil Company, the title to an undivided half interest in the oil and gas lease was rendered unmerchantable; but the court found that Richardson was entitled to specific performance of said contract to the unclouded half interest, with a corresponding abatement of the purchase price, and entered a decree directing this conveyance; and this appeal is from that decree.

We think the court below erred in its decree. This was not a contract to make a good title, but was a contract to convey such title only as Leahy had, the right being given to the purchaser to pass upon its sufficiency. It appears to be conceded that the lease to the Frederick Oil Company constituted a cloud, as found by the court, and fully warranted Richardson's attorney in refusing to approve the title. Richardson had the right to accept this title or to reject it upon the opinion of his attorney; but this right was to accept or to reject it in its entirety. He was called upon to make this decision, and responded by bringing this suit, and declined to pay the draft drawn upon him until after he knew the Ward well had come in as a producing well.

We think Richardson should not have been allowed thus to speculate on the outcome of the Ward well. His attorney should have approved the title or should have rejected it. Richardson had the right to waive the defect pointed out; but he did not elect to do so. It was unnecessary for Richardson to bring suit to acquire the interest which Leahy had in the lease from Mrs. Craig, as a valid assignment therefor was tendered more than once. Richardson understood this, for on May 6th he paid the draft which he had refused to pay on May 5th.

We conclude therefore that Richardson waived his right to accept the title tendered and was not subsequently entitled to enforce its specific performance. The decree of the court below is therefore reversed, and the cause is remanded, with directions to the court below to dismiss the complaint as being without equity.